The next case today is James Robinson v. Paul Camarena, Appeal No. 20-1783. Mr. Cruz, please introduce yourself for the record and proceed with your argument. Good morning. May it please the Court, Your Honors, Opposing Counsel, my name is Anthony Cruz, appearing pursuant to Local Rule 460F. I will first address the issue of this Court's jurisdiction and then the issue of the District Court's failure to discharge its duties to absent class members at the Fairness Health. On the issue of jurisdiction, Rules of Appellate Procedure 3C1B state that the Notice of Appeal must state what order or docket entry the appellant is appealing for. And the National Student Clearinghouse correctly notes that the Notice of Appeal references only the Court's denial of appellant's objections to the settlement, and not the Court's rejection of the argument that the District Court should accept the role of a fiduciary made by the appellant at the Fairness Hearing. The National Student Clearinghouse goes on to argue that, because appellant didn't mention the Court's rejection of the argument in the Notice of Appeal, this Court does not now have the jurisdiction to consider this argument about a fiduciary. Nevertheless, appellant respectfully requests this Court to review the decision of the District Court to overrule appellant's objection. The weakness in defense's argument is that this appellant rule has always been liberally enforced. Just last month, in United States v. Cato and Dino, this Court vacated the defendant's conviction. And if you look at the Notice of Appeal, it purports to only appeal the judge's sentence, not the conviction itself and not the adverse evidentiary ruling that was at the heart of defendant's appeal. If the First Circuit would have strictly enforced this appellant rule, this Court could not have vacated the jury conviction, and that decision would be illegal. Why is a criminal case precedent for your failure to notice in a civil case involving an objection to approval of a settlement in bankruptcy? What does the one have to do with the other? Criminal defendants have all sorts of due process rights that you do not. Because, Your Honor, this precedent does not distinguish... All right, if that's your argument, we understand it. Do you want to move to your objections to the approval of the settlement? Sure, Your Honor. The District Court failed to exercise both its quasi-fiduciary duties as well as its fiduciary duties to the absent class members by excluding evidence the appellant objector offered at the fairness hearing. Now, every circuit besides this one has adopted that position. It is a clear-cut rule. There is scant case law in the circuit regarding the definition of what a quasi-fiduciary... Mr. Cruz, where was the argument developed below that the District Court should apply a fiduciary duty standard? I haven't been able to find it. I understand there's a one-sentence loose reference to it, but I'm asking for a developed argument. So, the argument that the court should take on a fiduciary role was made by the appellant in a motion to have the evidence taken in at the fairness hearing, and then it was further developed when the objector made this appeal. Now, there's... No, no, no, no, no. Wait a minute. You can't say, oh, we argued it on appeal. Ignore the fact that we did not argue it before the court whose decision is being reviewed. All right. So, in addition to the jurisdictional notice question, you have a significant problem of not having presented the argument below, and therefore you are not free to present it to us. Your Honor, I was... All right. Now, that does not mean you have nothing left to argue, but perhaps you need to get to the what you have left to argue, unless you are contending that we have to accept your fiduciary argument in order to find an abuse of discretion in the denial of the objection to the settlement. Yes, Your Honor, that is precisely what we are arguing, that district court, because it failed to exercise its common law duties to the absent class members, that is the reason why... Then doesn't your whole appeal collapse, and wouldn't an opinion from this court basically say you did not raise the argument on which your entire appeal depends in the lower court, nor did you raise it in your notice of appeal, and that ends the matter? Well, Your Honor, there was also a motion for discovery made by the appellant to have the district court look at the evidence at the mediation hearing to see what the damages were. But there is no appeal. The notice of appeal doesn't specify the denial of the motion for discovery as one of the orders being appealed. So, you're back in the same jurisdictional box. That's fair, Your Honor, but it is the law in the circuit that when a court entertains an appellee's challenge based on Rule 3C1B, the court will look at the appellant's intent on the record as a whole. How can we glean an intent with respect to the motion for discovery which was not presented close in time to the fairness hearing? Yes, we can give some leeway based on what we perceive to be intent, but nothing requires us to supplement robes and gavels with crystal balls. That's right, Your Honor, but the crux of the argument is that when the appellant went to object at the fairness hearing, one of the reasons why he stated that the settlement was unfair was because the district court did not have knowledge of what the damages of the settlement would be or what the damages were in the action alleged by class counsel. That's why at the fairness hearing, the objector offered to give that proof of payment to the district court, and the district court did not take that into consideration. The objector offered to give only proof of what he had paid. That's right, Your Honor. That's the only thing. That's got nothing to do with discovery. That's knowledge that was within his possession, and it seems to me it has very little to do with the fairness of the settlement. The settlement is predicated upon average fee charge of $14 and change, which was more than was permitted by the Fair Credit Reporting Act. But the very fact that the settlement is predicated on an average charge indicates to me that the court was aware that some of the charges were above $14, others were below. So the submission of one charge that was above $14 doesn't seem to me to add anything of substance to the decisional mix. The problem, Your Honor, is that the district court had nothing to verify that the average charge was $14.95. That was just a statement made by class counsel and the defendants, something that they had come up with at the mediation hearing. The judge never saw the transcripts of that confidential mediation hearing. That is the issue with the fairness of the settlement. The district court did not know what the actual damages could have been. Counsel, let me see if I understand. The court sends a dispute to mediation. The parties actively engage in mediation, and in the course of that, they come to some agreements. Okay, that's what happened here. One of the agreements was on the average of the charges. That then gets reported to the court on the approval of the settlement. And you are saying that a court cannot rely on that result, which is not only an agreement of counsel, but one that has resulted from a court-ordered mediation? Is that really your argument? Yes, Your Honor, and that's for two reasons. The only parties in that room were two parties that have an inherent conflict of interest. I thought the mediator was in the room. Yes, but... But the mediator doesn't have any conflict of interest. It's not the purpose of the mediation? Yes, Your Honor, but again, there's no way for the district court in exercising its duties to absent class members to verify whether or not those damages are correct. Especially in light of the fact that each class member was entitled to statutory damages under the FCRA of a minimum. Only if there was a basis for a finding of willfulness. And I've seen nothing in the record so far that indicates that there's a basis for a finding of a willful violation. Well, Your Honor, we purport two reasons why this was a willful violation on the part of the defendants. This was certainly willful, one, because the charge for self-verification is limited by the FCRA. And in this case, whenever a consumer ordered their own verification, they checked a box saying that this was a self-verification. So the National Student Clearinghouse had to have known that these were self-verifications. Yes, but that overlooks the fact that there was a legitimate open question, novel, until it was decided by this case as to whether the FCRA applied at all to these student verifications. The issue has never been litigated, Your Honor. But if we look at the statutory definition of the term consumer reporting agency, it states in the statute, it is any person which, for monetary payments, dues, or on a cooperative basis, engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers for the purposes of furnishing those consumer reports to third parties. And if we look at the way the defendant defines itself on their own website, they state that the clearinghouse collects current enrollment data, and the clearinghouse's certification verification service enables employers and companies to make timely and well-informed hiring, promotion, and compensation decisions. Ergo, the statutory consumer reporting agency definition clearly encompasses the defendant, and each class member was entitled to at least $100 to $1,000 as minimum damages. And that's something that was overlooked by the district court when the district court approved the settlement. And that is an issue with the fairness, especially given the fact that class counsel to the two parties that came to the agreement have an inherent conflict of interest. Now, lastly, Your Honor. Mr. Cruz, I think we're going to leave it there so that we can hear from the other side. So thank you. If you would mute your audio and video. And Mr. Francis. Yes. Good morning, Your Honors, and may it please the court. Jim Francis for the FLE James Robinson and the certified class. We respectfully assert that this court should affirm the district court's order of July 2020, granting final approval to the class action settlement in this case. Chief Judge Saylor acted well within his discretion in approving this class action settlement, and the record before him fully supported approval under federal rule of civil procedure 23E2. I do not want to spend a lot of time on the waiver issues because it appears that the court is very well aware of the problems there, other than to point out that I disagree with Mr. Cruz. Chief Judge Saylor never refused the introduction of evidence. The objection that was filed by Mr. Camarena never mentioned anything about evidence or wanting to supply evidence. He could have supplied a declaration. He could have moved at that time for discovery. He didn't. That time had well elapsed before that motion was filed. So I would just like to point that out. Also, Judge Salyer, I want to just echo what you said and directed toward counsel. This settlement was mediated by Diane Welsh, a former federal judge of Jams, who is probably one of the most experienced class action mediators with regard to Fair Credit Reporting Act cases. She sat on the bench when I was a young lawyer back in the 90s. She has got tremendous experience, and she's mediated many, many of these cases. This was an arm's-length negotiation. I also want to address the comment from Mr. Cruz about the court having no evidence of the overcharge. Judge Salyer, you properly and accurately pointed out to counsel that in the very brief we submitted, and I'm looking at it right now, the court knew that the average overcharge that we had from the discovery that was obtained prior to the mediation and which we obtained at the mediation was an average of $9.41. That's in the record. It was before Judge Salyer at the time. So that is just simply incorrect. What I would just like to do now is just turn to this settlement. This settlement was not only a good settlement. I am proud of this, and with my co-counsel, two of the leading consumer rights organizations in this country, nonprofits, I might point out, including the National Consumer Law Center right here in Boston, supported this settlement. This was not a collusive settlement by any means. Judge Salyer, you pointed out correctly again. This was a case where there was a question as to whether or not the Fair Credit Reporting Act applied to the National Student Clearinghouse. No case had ever held that. In 2008, the Supreme Court issued a very, very instructive and instrumental decision for Fair Credit Reporting Act cases, the Safeco case. In the Safeco case, the Supreme Court held that in connection with defending a willful violation, if a defendant is able to establish that it had an objectively reasonable reading of the statute, albeit an incorrect one, there is no willfulness. The National Student Clearinghouse here clearly had an argument that no court had ever told it that it was covered under the Fair Credit Reporting Act. We all know that TransUnion and Equifax and Experian, those are credit reporting agencies that are covered, but there are a whole bunch of other companies and organizations which have not been found. We face a very significant willfulness challenge here. In addition, notwithstanding that risk, we were able to achieve nationwide injunctive relief and statutory compliance with a single statutory claim at issue here. When the statute, the FCRA, doesn't even provide for injunctive relief, we've been able to achieve a practice change that will benefit thousands of consumers in the future. Anybody who wants to get information regarding their dates of attendance at a college, through this settlement, the National Student Clearinghouse has agreed to limit its charges to the FCRA's statutory charges. In addition, there were only two objections out of more than 35,000 class members. No opt-outs at all. As for the council fees, they amounted to roughly 28% to 31% of the settlement value here, well within this circuit's range of approvable fees. For all those reasons, we believe that the court should uphold and affirm Chief Judge Saylor's final approval order. Rule 23E2 is not a standard of perfection, but whether or not the settlement is fair, reasonable, and adequate. We think there is no question here that it was, and that Chief Judge Saylor exercised his duties and his discretion. I will rest and welcome any questions. Thank you, Mr. Francis. Let me just check to make sure there are no additional questions. All right, if you would mute your audio and video, we'll hear from Ms. Simonetti. Good morning, Your Honors. Lisa Simonetti for Appellee National Student Clearinghouse. I believe the issues have been very well addressed by Mr. Francis. I just want to emphasize that with respect to these novel claims, and it has been established that this statute has never been litigated in this way before, National Student Clearinghouse had no choice but to deal with the risks presented by the claims, and I think that the settlement overall takes into account those risks. But to this day, the Clearinghouse is still of the belief that the statute doesn't even apply. But the settlement was reached at arm's length, and it's perfectly fair. Thank you. I'll rest. Thank you, Ms. Simonetti. We will conclude this case.